# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | **5:93-CR-00137-SLB-SGC-2** |
| ) | |
| **RODNEY HEWLETT,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter comes before the court on two motions for compassionate release filed by Defendant Rodney Hewlett. (Doc. 151; doc. 156).[1] Mr. Hewlett filed his first motion *pro se*, simply requesting a reduction in sentence or home confinement because of the current COVID-19 pandemic. (Doc. 151). With the help of counsel, Mr. Hewlett subsequently filed a second, more detailed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 156). Because both motions seek compassionate release, the court will address them together.

In his motions, Mr. Hewlett seeks a reduction in his sentence to time served because of his high risk from the COVID-19 pandemic. (Doc. 156). He asserts that extraordinary and compelling reasons support his compassionate release, as his

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

underlying health conditions, especially his chronic asthma, make him especially vulnerable to the virus. Further, Mr. Hewlett argues that he is not a danger to the community and that his lengthy sentence would not be imposed today because of changes made by the First Step Act of 2018. Mr. Hewlett asserts that these factors all weigh in favor of granting him compassionate release. (*Id.*). As explained below, the court agrees and will grant Mr. Hewlett's motions for compassionate release.

I.     **BACKGROUND**

In 1993, when Mr. Hewlett was 19 years old, a jury convicted him of one count of conspiracy to commit carjacking, in violation of 18 U.S.C. § 371, two counts of carjacking, in violation of 18 U.S.C. § 2119, and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). (Doc. 81 at 2); (Doc. 156-5). After the initial jury verdict, the trial court entered a judgment of acquittal on Mr. Hewlett's two Section 924(c) convictions because of double jeopardy concerns. (Doc. 156-5 at 1). The trial court then sentenced Mr. Hewlett to a total of 108 months' imprisonment for his carjacking offenses. (*Id.* at 2).

That sentence did not stand. The Eleventh Circuit held that Mr. Hewlett's convictions for both carjacking and for Section 924(c) violations did not implicate double jeopardy concerns; the Court vacated the district court's judgments of acquittal and remanded for sentencing on Mr. Hewlett's Section 924(c)

convictions. *United States v. Moore*, 43 F.3d 568, 574 (11th Cir. 1994).

At the time, Mr. Hewlett's first Section 924(c) conviction carried a 5-year consecutive mandatory minimum sentence, while his second Section 924(c) conviction carried a 20-year consecutive mandatory minimum sentence. *See* 18 U.S.C. § 924(c) (1993). Thus, because the Eleventh Circuit did not vacate the sentences for Mr. Hewlett's other convictions and because of the mandatory minimum sentence requirements under Section 924(c), the district court ultimately sentenced Mr. Hewlett to an additional 25 years of imprisonment on top of his original 108-month sentence, resulting in a total sentence of 34 years' imprisonment. (Doc. 156-5 at 7; doc. 86 at 20). Judge William Acker, the sentencing judge, expressed dismay at having to impose such a long sentence and stated at sentencing that the sentence was unfair. (Doc. 86 at 3).

Currently, Mr. Hewlett is incarcerated at Talladega FCI. He has already served more than 25 years of his sentence and his release date is scheduled for August 17, 2022. *See* https://www.bop.gov/inmateloc/ (last visited December 10, 2020). Mr. Hewlett's prison records show that he has obtained his GED and completed many education courses while incarcerated; he also has not had a disciplinary incident since 2010. (Doc. 156-2). Based on information from the Bureau of Prisons, Talladega FCI is experiencing a spike in COVID-19 cases and, as of December 10, 2020, has confirmed active COVID-19 cases in 36 inmates and

3

25 staff members.  *See* https://www.bop.gov/coronavirus/ (last visited December 10, 2020).

Mr. Hewlett is now 46 years old.  When he was a child, doctors diagnosed Mr. Hewlett with various neurological and physical problems, including a degenerative brain disease, seizures, and cerebral palsy.  (Doc. 81 at 12). Additionally, Mr. Hewlett's medical records, as submitted by counsel, show that Mr. Hewlett has suffered from asthma since childhood and still frequently uses an albuterol inhaler.  (Docs. 156-6, 156-7, 156-8).  Mr. Hewlett's medical records also show a past history of hypertension, though his records indicate that he does not currently have a problem with his blood pressure.  (Docs. 156-6, 156-7, 156-8).

Mr. Hewlett requested compassionate release from the warden at his correctional facility on April 11, 2020, based on concerns about COVID-19.  (Doc. 156-3).  The warden denied the request on May 18, 2020, stating that Mr. Hewlett's concerns did not warrant early release.  (*Id.*).  When he did not obtain relief from the warden, Mr. Hewlett filed his instant motions with the court.

**II.     STANDARD OF REVIEW**

Mr. Hewlett brings his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Section 3582, as amended by the First Step Act, states that courts generally cannot alter or modify a term of imprisonment after its imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence

modification from the Bureau of Prisons or from a prisoner, where the prisoner has exhausted administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Prior to passage of the First Step Act, however, courts could only reduce an inmate's sentence under Section 3582(c)(1)(A) upon a motion from the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (effective November 2, 2002 to December 20, 2018). The First Step Act amended Section 3582(c)(1)(A) to allow courts to also reduce a defendant's term of imprisonment upon motion filed directly by the defendant, after the exhaustion of administrative remedies. Section 603(b) of the First Step Act of 2018, Pub. L. 115 391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A).

Upon a prisoner's exhaustion of administrative remedies, Section 3582(c)(1)(A) allows a court to modify the prisoner's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable" *if* the court finds that "extraordinary and compelling reasons warrant such a reduction" *and* finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement for Section 3582(c)(1)(A), found in U.S.S.G. § 1B1.13, states that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C § 3582(c)(1)(A), the court may reduce a term of imprisonment […] if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent applicable," the court finds that (1) "extraordinary and compelling

reasons warrant the reduction" or that the defendant meets certain age-based requirements, (2) the defendant is not a danger to the community, and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The commentary to U.S.S.G. § 1B1.13 provides a list of specific circumstances that qualify as "extraordinary and compelling," including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. 1(A)–(C). The list culminates in subsection (D), a catchall provision entitled "other reasons," which states that extraordinary and compelling reasons exist where, "as determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). Accordingly, the policy statement limits extraordinary and compelling circumstances to those listed in the commentary or determined by the Director of the Bureau of Prisons. *Id.* The commentary for U.S.S.G. § 1B1.13 also includes a provision stating that a sentence reduction "under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons […]." *Id.* at cmt. 4.

Some question exists concerning whether the policy statement as set forth in U.S.S.G. § 1B1.13 actually applies to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act. The Eleventh Circuit has yet to issue a published opinion on the question of what Sentencing Commission policy

statements apply to motions for compassionate release filed by prisoners rather than the Bureau of Prisons. *United States v. Gist*, No. 20-13481, 2020 WL 7227282, at *2 n.2 (11th Cir. Dec. 8, 2020) (unpublished) (noting that the Eleventh Circuit has recently held oral argument implicating the issue but has not yet put forth a decision resolving the applicability question). However, in one of the two unpublished opinions in which the Eleventh Circuit has addressed motions for compassionate release filed by prisoners and based on the COVID-19 pandemic, the Court did observe that "notably" the policy statement in U.S.S.G. § 1B1.13 "has not been amended since the First Step Act was passed and refers only to a sentence reduction upon a motion from the BOP Director." *Id.* at *1; *cf. United States v. Winner*, No. 20-11692, 2020 WL 7137068 (11th Cir. Dec. 7, 2020) (unpublished) (affirming, without extensive analysis or reference to what policy statements apply, a district court decision denying compassionate release because the defendant had not shown extraordinary and compelling circumstances warranting release).

Considering the lack of binding precedent or clear direction from the Eleventh Circuit, this court turns to the developing trend of jurisprudence in other Circuits. In September of this year, the Second Circuit held that the policy statement in U.S.S.G. § 1B1.13 does *not* apply to Section 3582(c)(1)(A) motions filed by prisoners, rather than the Bureau of Prisons, because the language of the

7

policy statement is clearly outdated and states explicitly in multiple places that it applies upon motions filed by the Director of the Bureau of Prisons. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Specifically, the Second Circuit stated

> we look also to Application Note 4, which says that "[a] reduction *under this policy statement* may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13, n.4 (emphasis added). And we conclude that after the First Step Act, this language must be read not as a description of the former statute's requirements, but as defining the motions to which the policy statement applies. A sentence reduction brought about not "upon motion by the Director of the Bureau of Prisons" is not a reduction "under this policy statement." *Id.* In other words, if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it. Because Guideline § 1B1.13 is not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.

*Id.* (emphasis in original). Accordingly, the Second Circuit held that courts have discretion "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237.

Now, the Fourth, Sixth, and Seventh Circuits have agreed with the Second Circuit's holding in *Brooker* and have held that there is no applicable Sentencing Commission policy statement where a prisoner directly files a Section 3582(c)(1)(A) motion, such that courts may exercise discretion in determining

whether a prisoner has shown extraordinary and compelling circumstances warranting compassionate release.  *United States v. McCoy*, No. 20-6821, 2020 WL 7050097, at *7–*9 (4th Cir. Dec. 2, 2020); *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *7–*9 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *1–2 (7th Cir. Nov. 20, 2020).  Currently, no Circuit Court has clearly endorsed the opposite holding that the policy statement in U.S.S.G. § 1B1.13 applies to Section 3582(c)(1)(A) motions filed directly by prisoners and binds courts' determination of extraordinary and compelling circumstances.

      This court finds the reasoning of the Second, Fourth, Sixth, and Seventh Circuits persuasive and notes that such reasoning appears to complement the Eleventh Circuit's recent observation in an unpublished opinion that the policy statement in U.S.S.G. § 1B1.13 "notably" has not been updated since the passage of the First Step Act and refers only to motions filed by the Director of the Bureau of Prisons.  *Gist*, No. 20-13481, 2020 WL 7227282, at *1.  The policy statement in U.S.S.G. § 1B1.13 begins "Upon motion of the Director of the Bureau of Prisons" and the commentary states that a reduction in sentence under U.S.S.G. § 1B1.13 "may only be granted upon a motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. 4.  This court agrees with the current jurisprudence from the Circuit Courts that, therefore, the policy statement applies only to motions filed

by the Director of the Bureau of Prisons and does *not* apply to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act.  *See Brooker*, 976 F.3d at 236; *see also McCoy*, No. 20-6821, 2020 WL 7050097, at *7–*9; *Jones*, No. 20-3701, 2020 WL 6817488, at *7–*9; *Gunn*, No. 20-1959, 2020 WL 6813995, at *1–*2.  Therefore, courts are not constrained by U.S.S.G. § 1B1.13 and its commentary when determining whether a prisoner has made the requisite showing to qualify for compassionate release under Section 3582(c)(1)(A).  *See Brooker*, 976 F.3d at 237.

### III.   DISCUSSION

Mr. Hewlett argues that the court should grant him compassionate release under Section 3582(c)(1)(A) because he has shown extraordinary and compelling reasons warranting a reduction in his sentence.  (Doc. 156).  He asserts that, based on his underlying medical conditions and especially his asthma, he is at high risk to contract a severe case of COVID-19.  He also argues that his sentence is over-long because of a sentencing disparity in sentences for Section 924(c) offenses now that the First Step Act has eliminated the stacking of long consecutive mandatory minimum sentences for Section 924(c) offenses charged in the same indictment.  Mr. Hewlett acknowledges that the First Step Act changes to sentencing for Section 924(c) offenses are not retroactive, but asserts that the court can still consider the disparity when determining whether he is eligible for compassionate

10

release. He further asserts that his history during his incarceration shows that he is a good candidate for compassionate release. Mr. Hewlett also states that he properly exhausted his administrative remedies. (*Id.*).

The government opposes Mr. Hewlett's motions for compassionate release, conceding that he exhausted his administrative remedies but arguing that his medical conditions do not amount to extraordinary and compelling reasons warranting early release under Section 3582(c)(1)(A) and the applicable policy statement. (Doc. 158). The government asserts that, although Mr. Hewlett's asthma may place him at a higher risk of having a severe case of COVID-19, it does not make him any more likely to contract the virus in the first place. Thus, the government argues that Mr. Hewlett has not shown that he cannot care for himself in prison or that he has a serious or terminal medical condition, as required by the applicable policy statement. Further, the government argues that the court cannot reduce Mr. Hewlett's sentence under the provisions of the First Step Act related to Section 924(c) because those provisions are not retroactive. Finally, the government argues against compassionate release by asserting that, because he committed violent crimes, Mr. Hewlett poses a danger to the community. (*Id.*).

Mr. Hewlett filed a reply contending that his situation provides extraordinary and compelling reasons for granting compassionate release. (Doc. 159). He explains that simply being in prison puts him at higher risk of contracting COVID-

11

19, while his asthma raises his risk of having a severe case. He also argues that he does not seek a retroactive sentence reduction under the First Step Act's provisions regarding Section 924(c), but instead seeks compassionate release in part because of the sentencing disparity between his sentence for his Section 924(c) convictions and a sentence faced by someone sentenced after the passage of the First Step Act. (*Id.*). Mr. Hewlett also filed multiple notices of supplemental authority citing to cases supporting his argument that he is entitled to compassionate release. (Doc. 164; doc. 169; doc. 171).

In this case, the government concedes in its response to Mr. Hewlett's motions that Mr. Hewlett has properly exhausted his administrative remedies. *See id.*; (doc. 158 at 1). Thus, the court can consider the merits of Mr. Hewlett's motion for sentence reduction. Because, as discussed above, no Sentencing Commission policy statement applies to a Section 3582(c)(1)(A) motion like Mr. Hewlett's filed directly by a prisoner, the court must determine whether Mr. Hewlett has shown "extraordinary and compelling reasons" warranting a reduction in sentence and whether consideration of the Section 3553(a) factors supports compassionate release. *See Brooker*, 976 F.3d 228, 236–37; 18 U.S.C. § 3582(c)(1)(A).

Here, extraordinary and compelling reasons warrant a reduction in Mr. Hewlett's sentence. First, Mr. Hewlett's health conditions, in light of the current

COVID-19 pandemic and the difficulty combatting the virus in prisons, help to establish extraordinary and compelling circumstances.  The CDC lists asthmatics as one group of people who should take extra precautions to protect against COVID-19, stating that people with moderate to severe asthma "might be at increased risk" of getting severely ill from COVID-19."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 10, 2020).  Because of this risk, the CDC recommends that people with moderate to severe asthma avoid close contact with other people and stay away from anyone with the virus, among other precautions.  *Id.*

Mr. Hewlett's medical records show that he uses an inhaler daily to control his asthma; this appears to place him in the category of someone with moderate to severe asthma who should follow the CDC's guidelines to avoid contracting COVID-19.  *See* (Doc. 159-2 at 1); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 10, 2020).  However, Mr. Hewlett cannot effectively take those steps while incarcerated.  Correctional institutions create extreme challenges in controlling the spread of COVID-19 because of a lack of resources and difficulties keeping those who have the virus or have been exposed to the virus separate from uninfected inmates.  *See* Patricia Davidson, et al., *Open Letter to Hon. Larry Hogan,*

*Governor of Maryland*, https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf (last visited December 10, 2020) (letter from numerous faculty members at Johns Hopkins University schools of medicine, nursing, and public health stating that prisons are associated with high transmission rates of infectious diseases and opining that the close quarters, inability to social distance, and lack of resources for sanitization in prisons heightens the COVID-19 risk). Talladega FCI currently has numerous active cases of COVID-19, which creates a high risk of the virus spreading and makes it extremely difficult for an inmate like Mr. Hewlett to stay away from people with the virus. *See* https://www.bop.gov/coronavirus/ (last visited December 10, 2020); *see also* Gregg S. Gonsalves, et al., *Achieving a Fair and Effective Covid-19 Response: an Open Letter to Vice-President Mike Pence, and other Federal, State and Local Leaders from Public Health and Legal Experts in the United States;* https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_ experts.pdf (last visited December 10, 2020) (open letter signed by hundreds of legal and health professionals stating that individuals "residing in close quarters," including people incarcerated in prisons, "are especially vulnerable to COVID-19"); *United States v. Potts*, No. 06-80070-CR, 2020 WL 5540126, at *3 (S.D. Fla. Sept. 14, 2020) (stating that, "[d]ue to the conditions under which inmates live, they are at extreme

risk of infection once COVID-19 breaches prison walls"). In light of these conditions, Mr. Hewlett likely cannot follow the CDC guidelines for people with moderate to severe asthma.

Further, if Mr. Hewlett were to contract COVID-19, his asthma means that he would be more likely than many people to have a severe case. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 10, 2020). Additionally, Mr. Hewlett has a history of hypertension and neurological issues, both of which can create an increased risk of contracting a severe case of COVID-19. *See id.* Mr. Hewlett's blood pressure appears to now be under control and his childhood neurological problems do not appear in his recent medical records, but his history of those conditions complicates his medical situation and could further raise his risk of contracting a severe case of COVID-19. Therefore, Mr. Hewlett's health issues are sufficiently serious, in light of the COVID-19 pandemic, to meaningfully contribute to a showing of extraordinary and compelling circumstances warranting compassionate release.

But, Mr. Hewlett need not rely only on his health issues to show extraordinary and compelling circumstances warranting compassionate release; Mr. Hewlett's long sentence, comprised of stacked Section 924(c) sentences that would no longer be imposed after the passage of the First Step Act, bolsters his

15

showing of extraordinary and compelling circumstances.  While the Eleventh Circuit has not currently addressed the issue, the Fourth Circuit has held that long sentences for stacked Section 924(c) convictions can be treated as extraordinary and compelling reasons for a reduction in sentence, noting with approval that "multiple district courts have concluded that the severity of a Section 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *McCoy*, No. 20-6821, 2020 WL 7050097, at *10–11 (*citing United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020); *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020*); United States v. Haynes*, 456 F. Supp. 3d 496, 514–16 (E.D.N.Y. 2020);  *United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020); *United States v. Young*, 458 F. Supp. 3d 838, 848 (M.D. Tenn. 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020)).  This court will likewise take into consideration Mr. Hewlett's lengthy sentence and the disparity in sentences received by defendants after the passage of the First Step Act.

     Mr. Hewlett has long since served the 108-month sentence imposed for his violent carjacking crimes; the lion's share of his sentence has instead been comprised of his stacked consecutive mandatory sentences for his two

simultaneous Section 924(c) convictions.  In 2018, Congress passed the First Step Act and changed the language of Section 924(c) to avoid the "stacking" of Section 924(c) convictions charged in the same indictment; under the First Step Act, only a Section 924(c) violation committed after a prior conviction for a Section 924(c) offense has become final triggers an extra-long consecutive mandatory minimum sentence.  Pub. L. No. 115-391§ 403(a), 132 Stat. 5194 (2018).  As the government points out, that change does not apply retroactively.  *Id.*  But, as the Fourth Circuit has held, "[t]he fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)" because considering the individual circumstances in egregious cases is different than an "automatic vacatur." *McCoy*, No. 20-6821, 2020 WL 7050097, at *11.  Here, the court finds that Mr. Hewlett's individual circumstances rise to the level of extraordinary and compelling.

The recent changes to the sentencing paradigm for Section 924(c) offenses instituted by the First Step Act create a strong disparity between Mr. Hewlett's sentence and the sentences of those who have committed the same offense since the passage of the First Step Act.  Further, even before the passage of the First Step Act, the district court stated at Mr. Hewlett's sentencing that the stacking of Mr. Hewlett's Section 924(c) convictions, on top of his originally imposed 108-month

17

sentence, was "inherently unfair." (Doc. 86 at 3). Judge Acker, the sentencing judge, said that if he had known about the Section 924(c) convictions at the original sentencing, he would have "tried to find a way" to give a sentence of "25 years at the maximum." (*Id.* at 17). But, Judge Acker instead found that his "hands [were] tied" and he had to sentence Mr. Hewlett to longer than he thought was fair. (Doc. 86 at 10). The passage of the First Step Act has exacerbated that underlying unfairness. The court cannot help but note that, if Mr. Hewlett were sentenced for his convictions today, he would face a *much* shorter sentence because no 20-year mandatory minimum would apply to his second Section 924(c) offense. The initial severity of Mr. Hewlett's sentence, which gave Judge Acker qualms, and the new sentencing disparity for Section 924(c) offenses after the passage of the First Step Act, support a finding of extraordinary and compelling circumstances. Thus, the court finds that Mr. Hewlett's extremely lengthy sentence, combined with his elevated risks from the current COVID-19 pandemic, support a finding of extraordinary and compelling circumstances warranting compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

The court also finds that consideration of the factors set forth in Section 3553(a) supports compassionate release. *See id.* Section 3553(a) requires courts to impose sentences that are "sufficient, but not greater than necessary" in light of a multitude of factors. 18 U.S.C. § 3553(a). Those factors include, among other

things, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, the types of sentence available, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* Here, the factors support a reduction in Mr. Hewlett's sentence.

First, Mr. Hewlett's history and characteristics support reducing his sentence. *See* 18 U.S.C. § 3553(a). Mr. Hewlett did commit dangerous violent crimes, but he was only 18 years old when he committed the armed carjacking offenses that led to his incarceration. (Doc. 81). He has spent his entire adult life—more than 25 years—in prison and his prison record shows that he has made great progress toward rehabilitation: he obtained his GED, took advantage of many other educational opportunities, and has not had a disciplinary incident in a decade. (Doc. 156-2). He has clearly focused on bettering himself while in prison. Further, as discussed above, a large sentencing disparity—which Section 3553(a) seeks to avoid—now exists between Mr. Hewlett's Section 924(c) sentences and Section 924(c) sentences of defendants sentenced after the passage of the First Step Act. *See* 18 U.S.C. § 3553(a). Finally, Mr. Hewlett has already served more than 25 years in prison for his offenses, which adequately reflects the seriousness of his crimes and promotes the interests of justice. *See id.* Accordingly, after

considering the Section 3553(a) factors, the court finds that Mr. Hewlett has already served a custodial sentence that is sufficient for his crimes.  *See* 18 U.S.C. § 3553(a).

Because Mr. Hewlett has shown extraordinary and compelling reasons for a reduction in his sentence and the Section 3553(a) factors favor release, the court finds that, pursuant to Section 3582(c)(1)(A), Mr. Hewlett's custodial sentence should be reduced to time served.  Accordingly, the court **WILL GRANT** Mr. Hewlett's motions for compassionate release (doc. 151; doc. 156), and reduce his sentence to time served.  However, the court notes that Mr. Hewlett still must serve his originally imposed three-year term of supervised release.  (Doc. 156-5).

For the safety of Mr. Hewlett and the community, he shall self-quarantine at his approved residence for 14 days upon his release, except for necessary medical treatment and only upon prior notice and approval by the probation officer, except in a true emergency.

**DONE** and **ORDERED** this 14th day of December, 2020.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE